1

Hon. Robert S. Lasnik

2

3

4

5

6

7                     UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON

8

9    AMAZON.COM, INC.,                          No. 2:09-cv-0681-RSL

10                     Plaintiff,               DEFENDANT DISCOVERY
                                               COMMUNICATIONS, INC.'S MOTION
11          v.                                 FOR SUMMARY JUDGMENT OF NO
                                               INFRINGEMENT
12   DISCOVERY COMMUNICATIONS,
     INC.,                                     NOTE ON MOTION CALENDAR:
13                                             January 29, 2010
                     Defendant.
14                                             ORAL ARGUMENT REQUESTED

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL

**YARMUTH WILSDON CALFO**

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

sf-2769909

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ............................................................................................................... 1

ISSUES PRESENTED ........................................................................................................ 1

STATEMENT OF UNDISPUTED FACTS ........................................................................ 2

     A.     The Amazon Patents Are Directed to a Method and System
           for Formulating Refined Search Queries and Product
           Recommendations. .............................................................................. 2

     B.     Plaintiff's Infringement Contentions Are Directed to the
           Delivery Agent Website, and Not the Old In-House
           Discovery Store Website. ..................................................................... 3

     C.     The Delivery Agent Website Was Developed and Is
           Operated and Controlled by Delivery Agent and Its
           Technology Suppliers, and Not by Discovery. ............................................ 5

          1.     Structure of the Relationship Between Discovery and
                 Delivery Agent. ............................................................................ 6

          2.     The Transition from the Old In-House Discovery Store
                 Website to the New Delivery Agent Website. ................................. 8

          3.     Discovery Does Not Operate, Control, or Supply Any
                 Component of the Computer Software and Hardware that
                 Support the Delivery Agent Website. ........................................... 10

     D.     Discovery Has Not Knowingly Induced Delivery Agent to
           Formulate Refined Search Queries or Product
            Recommendations in a Manner that Infringes the Amazon
           Patents. .......................................................................................... 10

ARGUMENT ..................................................................................................................... 11

I.     LEGAL STANDARD FOR SUMMARY JUDGMENT ....................................... 11

II.    DISCOVERY IS ENTITLED TO SUMMARY JUDGMENT THAT IT
        DOES NOT DIRECTLY INFRINGE PLAINTIFF'S PATENTS. ...................... 12

     A.     The Patent Claims Asserted by Plaintiff Are Directed to the
           Internal Workings of the Delivery Agent Website ................................... 13

     B.     Discovery Does Not Directly Infringe the Method Claims
           Because It Does Not Operate or Control the Delivery Agent

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page i

ılı
YARMUTH  WILSDON  CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

sf-2769909

Website and Therefore Does Not Perform Any Steps of the
Claimed Method....................................................................................14

C.    Discovery Does Not Directly Infringe the System Claims
Because It Does Not Make, Use, Offer to Sell, Sell, or
Import Any Component of the System that Controls the
Delivery Agent Website..........................................................................16

D.    Discovery Does Not Jointly Infringe the Amazon Patent
Because It Does Not Direct or Control the Allegedly
Infringing Activities of Delivery Agent, SLI Systems, and
Aggregate Knowledge. ...........................................................................18

III.    DISCOVERY IS ENTITLED TO SUMMARY JUDGMENT THAT IT
DOES NOT CONTRIBUTORILY INFRINGE PLAINTIFF'S PATENTS. ........19

IV.    DISCOVERY IS ENTITLED TO SUMMARY JUDGMENT THAT IT
HAS NOT ACTIVELY INDUCED INFRINGEMENT OF PLAINTIFF'S
PATENTS ..........................................................................................................20

A.    Active Inducement Requires Plaintiff to Prove that
Discovery Has Knowingly Induced Others to Infringe
Plaintiff's Patents, with the Specific Intent to Cause Such
Infringement...........................................................................................20

B.    Plaintiff Cannot Establish that Discovery Has Knowingly
Induced Delivery Agent to Infringe Plaintiff's Patents, with
the Specific Intent to Cause Such Infringement. ..................................23

CONCLUSION..............................................................................................................24

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page ii

YARMUTH  WILSDON  CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

sf-2769909

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A. Stucki Co. v. Worthington Industries, Inc.*,
  849 F.2d 593 (Fed. Cir. 1988)....................................................................22

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)....................................................................................11

*Atlantic Thermoplastics Co., Inc. v. Faytex Corp.*,
  970 F.2d 834 (Fed. Cir. 1992)...................................................................15

*BMC Res., Inc. v. Paymentech, L.P.*,
  498 F.3d 1373 (Fed. Cir. 2007)................................................................18

*Desper Products, Inc. v. QSound Labs, Inc.*,
  157 F.3d 1325, 1332 (Fed. Cir. 1998) .....................................................12

*DSU Med. Corp. v. JMS Co.*,
  471 F.3d 1293 (Fed. Cir. 2006) (en banc).....................................20, 23, 24

*EpicRealm Licensing, LLC v. Autoflex Leasing, Inc.*,
  492 F. Supp. 2d 608 (E.D. Tex. 2007) ("*EpicRealm I*")..................... passim

*EpicRealm Licensing, LP v. Autoflex Leasing, Inc.*,
  2008 U.S. Dist. LEXIS 109208 (E.D. Tex. July 15, 2008)
  ("*EpicRealm II*") ......................................................................12, 17, 18, 19

*Hewlett-Packard Co. v. Bausch & Lomb*,
  909 F.2d 1464 (Fed. Cir. 1990).......................................................... 19, 21

*Joy Technologies, Inc. v. Flakt, Inc.*,
  6 F.3d 770 (Fed. Cir. 1993) ...............................................................14, 16

*MercExchange, L.L.C. v. eBay, Inc.*,
  401 F.3d 1323 (Fed. Cir. 2005),
  *vacated and remanded on other grounds*, 547 U.S. 388 (2006) ...................12, 20, 21

*Muniauction, Inc. v. Thomson Corp.*,
  532 F.3d 1318 (Fed. Cir. 2008), *cert. denied*, 129 S. Ct. 1585 (2009) .......................18

*NTP, Inc. v. Research In Motion, Ltd.*,
  418 F.3d 1282 (Fed. Cir. 2005)................................................................15

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page iii

sf-2769909

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

*Organon Inc. v. Teva Pharms., Inc.*,
    244 F. Supp. 2d 370 (D.N.J. 2002) ...............................................................................22

*Ronald A. Katz Tech. Licensing, L.P. v. Verizon Communs., Inc.*,
    2002 U.S. Dist. LEXIS 24117 (E.D. Pa. Dec. 18, 2002) ...........................................22

*Wahpeton Canvas Co., Inc. v. Frontier, Inc.*,
    870 F.2d 1546 (Fed. Cir. 1989) .................................................................................13

## STATUTES AND RULES

35 U.S.C.
    § 271(a) ..............................................................................................1, 12, 14
    § 271(b) ............................................................................................2, 12, 19
    § 271(c) ............................................................................................2, 12, 19

Fed. R. Civ. P. 56(c) .........................................................................................11

Local Patent Rule 120 .........................................................................................3

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page iv

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

sf-2769909

1

## INTRODUCTION

The premise of this motion is simple:  Defendant Discovery Communications, Inc. ("Discovery") cannot be liable for infringing Plaintiff's patents because Discovery did not develop and does not operate the website that Plaintiff has accused of infringement.  Rather, the website was developed and is operated by Delivery Agent, Inc. ("Delivery Agent" or "DA"), which is not an affiliate or agent of Discovery.  Delivery Agent — not Discovery — sells and delivers the products that Delivery Agent advertises on its website.  Delivery Agent and its technology suppliers — not Discovery — operate and control the components of the allegedly infringing computer system that runs the Delivery Agent Website.

Because Discovery does not operate, control, or supply any component of the allegedly infringing computer system, it cannot be liable for direct or contributory infringement of Plaintiff's patents.  Discovery also cannot be liable for "active inducement" of infringement, because Discovery has not knowingly induced Delivery Agent to infringe Plaintiff's patents with the specific intent to induce infringement.  Therefore, Discovery is entitled to summary judgment on Plaintiff's infringement claims.[1]

## ISSUES PRESENTED

1.      Is Discovery entitled to summary judgment on Plaintiff's claim for direct infringement of Plaintiff's patents under 35 U.S.C. § 271(a), when there is no genuine dispute that Discovery does not practice any step of the claimed method and does not make, use, offer to sell, sell, or import the allegedly infringing system?

---

[1] Discovery requests oral argument because this is an important motion that will, if granted, dispose of the entire case.  Discovery also contends that the Amazon patents are not infringed and are invalid for the additional reasons in its Non-Infringement and Invalidity Contentions that it served on Plaintiff.  But the Court need not address those additional reasons now because the undisputed fact that Discovery does not operate, control, or supply the allegedly infringing system is a simple basis for summary judgment that does *not* depend on the meaning of the patent claims or issues of prior art.  This is why Discovery is filing this motion now, before the parties and the Court have expended resources addressing the meaning of claims that cannot apply regardless of how they are interpreted.

DEFENDANT DISCOVERY COMMUNICATIONS, INC.'S MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 1

**ili**
YARMUTH WILSON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

sf-2769909

1   2.      Is Discovery entitled to summary judgment on Plaintiff's claim for

2   contributory infringement of Plaintiff's patents under 35 U.S.C. § 271(c), when there is no

3   genuine dispute that Discovery does not offer to sell, sell, or import a component of the

4   allegedly infringing system, knowing such component to be especially adapted for use in

5   infringement of Plaintiff's patents?

6   3.      Is Discovery entitled to summary judgment on Plaintiff's claim for actively

7   inducing infringement of Plaintiff's patents under 35 U.S.C. § 271(b), when there is no

8   genuine dispute that Discovery has not knowingly induced infringement of Plaintiff's

9   patents and does not have specific intent to encourage another's infringement?

10  ### STATEMENT OF UNDISPUTED FACTS

11  This motion is based on the following facts, all of which are not subject to any

12  genuine dispute.

13  **A.    The Amazon Patents Are Directed to a Method and System for
        Formulating Refined Search Queries and Product Recommendations.**

14

15  1.      Plaintiff Amazon.com ("Plaintiff" or "Amazon") claims that Discovery is

16  infringing the claims of four patents: U.S. Patent No. 6,006,225 (the "'225 Patent");

17  6,169,986 (the "'986 Patent"); 6,266,649 (the "'649 Patent"); and 6,317,722 (the "'722

18  Patent"). (Plaintiff's Complaint, Dkt. No. 1.)[2] The '225 Patent and '986 Patent (collectively,

19  the "Refined Search Patents") are directed to a method and system of assisting users in

20  refining a search query on an online store or other database, which involves certain specific

21  steps and components. (*See*, *e.g.*, '225 Patent, Claims 1, 14; '986 Patent, Claims 1, 6.) For

22  example, if a user requests the Amazon.com website to search for books related to "outdoor

23

24  [2] The Amazon patents are attached to Plaintiff's Complaint, which is Docket No. 1. The

25  language of the independent claims that Plaintiff has asserted is set forth in Exhibit 1 to the
    accompanying Declaration of Grant L. Kim In Support of Defendant's Motion for

26  Summary Judgment of No Infringement ("Kim Decl.").

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 2

sf-2769909

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1  trail," the website system performs steps that result in the suggestion that the user narrow

2  the search to "outdoor trail — bike." ('225 Patent, Fig. 9 and Col. 14, lines 13-23.)

3      2.    The '649 Patent and '722 Patent (collectively, the "Product Recommendation

4  Patents") are directed to a method and system of recommending products to the user of an

5  online store who has expressed an interest in a particular product, which involves certain

6  specific steps and components.  (*See*, *e.g.*, '649 Patent, Claims 1; '722 Patent, Claim 1.)  For

7  example, if a user of the Amazon.com website expresses an interest in a particular book, the

8  website system performs certain steps that result in a recommendation that the user consider

9  certain other books.  ('649 Patent, Col. 4, lines 60-66, Col. 6, lines 25-33.)

10      **B.**    **Plaintiff's Infringement Contentions Are Directed to the Delivery Agent**

11          **Website, and Not the Old In-House Discovery Store Website.**

12      3.    As required by Local Patent Rule 120, Plaintiff has identified the device that

13  allegedly infringes Plaintiff's Patents (the "Accused Device") as the "Discovery On-Line

14  Store," which is available at http://store.discovery.com, and can also be accessed from

15  several other website addresses.  (Kim Decl. Ex. 2, Plaintiff's Disclosure of Asserted

16  Claims and Preliminary Infringement Contentions, dated October 15, 2009 ("Plaintiff's

17  Infringement Contentions"), at 2-3.)

18      4.    Plaintiff's Infringement Contentions include numerous screenshots of the

19  allegedly infringing website.  All of these screenshots are of the website that has been

20  available at http://store.discovery.com from April 1, 2009, to the present.  (Declaration of

21  Kelly Beam In Support of Defendant's Motion for Summary Judgment of No Infringement

22  ("Beam Decl."), filed herewith, ¶¶ 6, 18.)  That website was developed and is operated by a

23  company called Delivery Agent, Inc. ("Delivery Agent" or "DA"), and is thus referred to

24  herein as the "Delivery Agent Website."  (*Id.*, ¶¶ 6, 12-13.)  Delivery Agent is not a

25  subsidiary, affiliate, or agent of Discovery.  (Declaration of Kelly Day In Support of

26

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 3

YARMUTH WILSON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

sf-2769909

1    Defendant's Motion for Summary Judgment of No Infringement ("Day Decl."), filed

2    herewith, ¶ 22.)

3        5.    Before April 1, 2009, Discovery had developed and was operating a different

4    e-commerce website, referred to herein as the "In-House Discovery Store Website." (Beam

5    Decl., ¶¶ 3, 11.)  None of the screenshots included with Plaintiff's Infringement

6    Contentions are of the old In-House Discovery Store Website.  (*Id*., ¶ 18.)  This is clear

7    because Plaintiff's screenshots include distinctive features that appear in the Delivery Agent

8    Website and that were not part of the In-House Discovery Store Website.  (*Id.*, ¶¶ 19-36.)

9        6.    For example, the "Search Results" page in Plaintiff's Infringement

10   Contentions includes the following features that appear in the Delivery Agent Website but

11   not in the old In-House Discovery Store Website: (a) a list of "additional search

12   suggestions"; (b) the option of listing search results in "list" or "grid" format; and (c) the

13   option of sorting search results by popularity, or lowest or highest price.  (Beam Decl.,

14   ¶¶ 19-24 and Ex. 1 thereto.)  Similarly, the "Product Recommendation" page in Plaintiff's

15   Infringement Contentions has the same layout and wording as the Delivery Agent Website,

16   which is different from the old In-House Discovery Store Website.  (Beam Decl., ¶ 33 and

17   Exs. 5 and 6 thereto.)

18       7.    Further, Plaintiff contends that the accused website uses search and product

19   recommendation technology from SLI Systems and Aggregate Knowledge, as evidenced by

20   screenshots that refer to these companies.  (Beam Decl., ¶¶ 25-26, 34, and Exs. 2 and 7

21   thereto; *see* Kim Decl. Ex. 2, Plaintiff's Infringement Contentions, Ex. A at 1-4; Ex. D at

22   11-12.)  However, the In-House Discovery Store Website did not use any technology from,

23   or refer to, these companies.  (Beam Decl., ¶¶ 27, 35 and Ex. 2 at 4.)

24       8.    In sum, Plaintiff's Infringement Contentions are indisputably directed to the

25   Delivery Agent Website that has been in operation since April 1, 2009, because (a) all of

26   the screenshots in Plaintiff's Infringement Contentions include distinctive features that

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 4

YARMUTH WILSON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

sf-2769909

appear in the Delivery Agent Website and that were not part of the old In-House Discovery Store Website; and (b) Plaintiff's Infringement Contentions are directed at technology from SLI Systems and Aggregate Knowledge that is allegedly used by the Delivery Agent Website, and that was not used by the In-House Discovery Store Website.

### C. The Delivery Agent Website Was Developed and Is Operated and Controlled by Delivery Agent and Its Technology Suppliers, and Not by Discovery.

9.      It is undisputed that the Delivery Agent Website was developed and is operated by Delivery Agent, and not by Discovery.  Indeed, Delivery Agent emphasizes this point by displaying the following message on the Delivery Agent Website:

**POWERED BY** **, INC. ©2009 ALL RIGHTS RESERVED**
Delivery Agent, Inc. is the seller of all Discovery Channel Store merchandise
and is solely responsible for all aspects of your purchase

(Beam Decl., Ex. 2 at 2-3.)

10.      Further, as noted above, Plaintiff contends that the Delivery Agent Website uses search and product recommendation technology from SLI Systems and Aggregate Knowledge.  (Beam Decl., ¶¶ 25-26, 34, and Exs. 2 and 7 thereto.)  Discovery does not know Delivery Agent's precise relationship with SLI Systems and Aggregate Knowledge, but Discovery has no contract or other relationship with these two companies as to either the old In-House Discovery Website or the new Delivery Agent Website.  (*Id.*, ¶¶ 27, 35.)

11.      The fact that Discovery did not develop and does not operate or control the allegedly infringing website is demonstrated by (1) the overall structure of the relationship between Discovery and Delivery Agent; (2) Discovery's limited role in the transition to the new Delivery Agent Website; and (3) Discovery's lack of involvement in operating, controlling, selecting, or supplying any component of the computer system that supports the Delivery Agent Website.

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 5

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1. **Structure of the Relationship Between Discovery and Delivery Agent.**

12.     Defendant Discovery Communications owns the Discovery Channel and other television networks such as Animal Planet and The Learning Channel ("TLC"), which produce and broadcast programs such as "Planet Earth." (Day Decl., ¶ 3.) Until April 2009, Discovery sold products directly to consumers through the old In-House Discovery Website, which was developed and operated by Discovery. (*Id.*; Beam Decl., ¶¶ 3-4.) Developing and operating the In-House Discovery Website required Discovery to maintain a substantial infrastructure, including:

(a)     A team of employees who wrote the computer code that controls the website, updated the website database, developed new features, fixed any problems, and generally ensured smooth operation of the website;

(b)     A network of computer servers and databases, including a "staging site" that allowed Discovery to test new code in a private, "offline" environment, and "production servers" that made the website available to the public; and

(c)     Relationships with external service providers that supported functions such as the processing of customer payments.

(Declaration of Chris McFadden In Support of Defendant's Motion for Summary Judgment of No Infringement ("McFadden Decl."), filed herewith, ¶¶ 6-12 and Ex. 1 thereto; Beam Decl., ¶ 5.)

13.     In the summer of 2008, Delivery Agent proposed a "complete turnkey solution" under which Delivery Agent would assume responsibility for almost all aspects of an e-commerce business, including developing and maintaining an e-commerce website based on Delivery Agent's existing platform; selecting products to be sold; procuring and maintaining product inventory; shipping goods to customers; and providing customer service and certain marketing services. (Day Decl., ¶¶ 7-10 and Exs. 1 to 3 thereto.)

DEFENDANT DISCOVERY COMMUNICATIONS, INC.'S MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 6

YARMUTH WILSON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

sf-2769909

14.     In November 2008, Discovery and Delivery Agent signed a term sheet providing that Delivery Agent would be responsible for website design and development, transaction processing, warehousing and fulfillment (i.e., shipping goods to customers), vendor management, and customer service.  As to the website, Delivery Agent agreed to manage all aspects of creative site design and usability testing, development, and hosting, as well as all day-to-day site operations.  (*Id.*, ¶¶ 12, 15 and Ex. 5 at 1.)

15.     On December 23, 2008, Discovery and Delivery Agent entered into an "E-Commerce Operation Agreement" that required Delivery Agent to develop and operate the website and to handle other aspects of the e-commerce business.  (*Id.*, ¶¶ 16-19 and Ex. 6.)  Delivery Agent owned the "E-Commerce Platform," meaning the proprietary software and tools used by Delivery Agent to host the website.  (*Id.*, Ex. 6, Sections 1.6, 5.7.)  Delivery Agent was required to make certain payments to Discovery, but was entitled to retain any remaining revenues.  (*Id.*, ¶ 17, and Ex. 6, Sections 8.1, 8.2, 8.3.)  Thus, Delivery Agent is not a mere agent or subcontractor that created a website that enabled Discovery to make sales to consumers.  Rather, Delivery Agent is an independent contractor that developed its own website to sell goods owned and procured by Delivery Agent, so that Delivery Agent could generate profits on those sales.  (*Id.*, ¶ 22; Ex. 6, Section 16.3.)

16.     The E-Commerce Operation Agreement did not include a detailed list of required website features.  Rather, it merely provided that the website would be developed in a manner consistent with industry standards; would have full search and indexing capabilities; and would integrate with other Discovery websites and have substantially the same look and feel.  (*Id.*, ¶ 19 and Ex. 6, Sections 1.21, 3.1(b), 3.3.)  Discovery saw no need to list specific features because Delivery Agent already had a website platform and had a natural incentive to make an attractive website to generate greater revenues.  (*Id.*, ¶ 20.)  Discovery also saw no need to specify the method of implementing particular features because this was a matter to be decided by Delivery Agent, and Discovery did not care what

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 7

sf-2769909

YARMUTH WILSON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

method was used as long as the website functioned properly.  (*Id.*, ¶ 21.)  During the

contract negotiations, Discovery did not discuss implementation details with Delivery

Agent because Discovery relied on Delivery Agent's expertise, and one of the reasons it

entered into the deal was so that Discovery would no longer need to bear the substantial

cost of developing and operating an e-commerce website.  (*Id.*, ¶ 14.)

17.     The E-Commerce Operation Agreement gave Discovery the right to approve

the Delivery Agent Website before it was launched, but this right was limited to the website

as it appears to users.  Discovery did not have the right to review or approve the specific

software or website code that Delivery Agent chose to implement particular features.  (*Id.*,

¶ 21 and Ex. 6, Section 3.3.)

> **2.     The Transition from the Old In-House Discovery Store Website to the New Delivery Agent Website.**

18.     Pursuant to the E-Commerce Operation Agreement, Delivery Agent

launched the new Delivery Agent Website on April 1, 2009.  (Beam Decl., ¶ 13.)  The new

Delivery Agent Website superseded the old In-House Discovery Website, which meant that

users communicated not with the old website operated by Discovery, but rather with the

new website operated by Delivery Agent.  (*Id.*; McFadden Decl., ¶ 13.)

19.     Delivery Agent essentially took over Discovery's e-commerce business,

becoming responsible not only for developing and operating the website, but also for

procuring, selling, and delivering products; maintaining inventory; and providing customer

service.  (Beam Decl., ¶ 71.)  Discovery, in contrast, ceased to have these responsibilities

and transferred its inventory to Delivery Agent.  (*Id.*, ¶¶ 71-73; Day Decl., ¶¶ 25-28.)  As a

result, most members of Discovery's e-commerce team either left Discovery or moved to

new positions with different responsibilities within Discovery.  (Day Decl., ¶ 30; McFadden

Decl., ¶¶ 5, 13, 17; Beam Decl., ¶ 7.)  Discovery also terminated its contracts with outside

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 8

**YARMUTH WILSON CALFO**

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

sf-2769909

1  contractors and decommissioned or repurposed the computer servers that had made its old

2  website available to the public.  (Day Decl., ¶ 29; McFadden Decl., ¶ 13.)

3  20.  Consistent with the structure of the E-Commerce Operation Agreement,

4  Discovery's role during the transition to the new Delivery Agent Website was limited.  The

5  "kick-off meeting" in December 2008 focused on Delivery Agent's requests for information

6  about Discovery's business that was unrelated to the website, such as product inventory,

7  customer orders and shipment, guidelines related to Discovery brands and assets, marketing,

8  merchandising, and customer data.  (Beam Decl., ¶¶ 41-46 and Exs. 8, 9.)  There was a

9  meeting to discuss technical issues related to the transition, but this meeting was quite short

10  as Delivery Agent had decided to use its own website platform instead of portions of

11  Discovery's website system and thus did not require much technical information from

12  Discovery.  (*Id.*, ¶ 46; McFadden Decl., ¶¶ 15-16.)

13  21.  In January 2009, Discovery provided comments on static website designs

14  ("comps"), but these comments were limited to issues such as layout and did not involve

15  the specific methods of formulating refined search queries or product recommendations,

16  which are the features to which the Amazon patents are directed.  (Beam Decl., ¶¶ 50-53

17  and Exs. 10, 11.)  Discovery and Delivery held a meeting in February 2009 that focused on

18  merchandising and did not address specific website features.  (*Id.*, ¶ 54-55 and Ex. 12;

19  Declaration of Christine Wacker In Support of Defendant's Motion for Summary Judgment

20  of No Infringement ("Wacker Decl."), filed herewith, ¶ 6.)

21  22.  Beginning on March 19, 2009, Discovery reviewed a test version of the

22  Delivery Agent Website and provided comments in the form of a "bug list" as well as in

23  conference calls.  (Beam Decl., ¶¶ 56-57 and Exs. 13-16.)  Discovery's comments generally

24  involved problems or "bugs" with the layout or operation of the Delivery Agent Website,

25  such as misspelling ("Seach" instead of "Search") or malfunction (wrong product added to

26  Facebook page).  (*Id.*, ¶ 61 and Ex. 13 at 1, items 2 and 13.)  Moreover, Discovery's review

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 9

YARMUTH WILSON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

sf-2769909

1  was limited to the website as it was designed to appear to users.  Discovery did not have

2  access to the website code or database, so all revisions to the Delivery Agent Website were

3  made by Delivery Agent, and not by Discovery.  (*Id.*, ¶¶ 56, 58.)  Discovery provided its

4  last version of the bug list to Delivery Agent on April 29, 2009.  (*Id.*, ¶ 62 and Exs. 14-16.)

      **3.**    **Discovery Does Not Operate, Control, or Supply Any Component of the Computer Software and Hardware that Support the Delivery Agent Website.**

7        23.     The Delivery Agent Website has remained stable from its launch in April

8  2009 until the present, with only routine updates and minor revisions.  (Wacker Decl.,

9  ¶ 13.)  Discovery has no involvement in the day-to-day administration of the Delivery

10  Agent Website, which is operated by Delivery Agent.  (*Id.*)  Discovery reviews the website

11  as it appears to customers, but cannot access, operate, or control the "back-end" computer

12  hardware and software that control the Delivery Agent Website, and thus cannot fix

13  problems with the Delivery Agent Website or modify the website code or database.  (Beam

14  Decl., ¶¶ 14, 58; McFadden Decl., ¶ 14; Day Decl., ¶ 21.)

15        24.     Discovery does not make, operate, control, offer to sell, sell, import, or

16  supply any component of the computer hardware and software that supports the Delivery

17  Agent Website.  (Beam Decl., ¶¶ 13, 75; McFadden Decl., ¶¶ 17, 23-25; Wacker Decl.,

18  ¶¶ 21-23.)  Discovery also had no role in selecting any such component.  (Beam Decl., ¶ 75;

19  McFadden Decl., ¶¶ 17, 21, 23; Wacker Decl., ¶¶ 21-23.)  Instead, the Delivery Agent

20  Website system was developed and is operated and controlled by Delivery Agent, with

21  possible support from technology suppliers such as SLI Systems and Aggregate Knowledge,

22  over whom Discovery has no control.  (Beam Decl., ¶¶ 14, 25-27, 34-35.)

      **D.**    **Discovery Has Not Knowingly Induced Delivery Agent to Formulate Refined Search Queries or Product Recommendations in a Manner that Infringes the Amazon Patents.**

25        25.     Discovery was not aware of Amazon's "Refined Search" and "Product

26  Recommendation" patents until after Amazon filed this lawsuit in May 2009, which was

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 10

ılı
YARMUTH WILSON CALFO

sf-2769909

1    after the Delivery Agent Website had already been developed and launched.  (Day Decl.,

2    ¶ 33; Beam Decl., ¶ 38; McFadden Decl., ¶ 27; Wacker Decl., ¶¶ 25, 27.)

3          26.    Discovery has not induced or encouraged Delivery Agent to adopt a specific

4    method or system for formulating refined search queries or product recommendations at

5    any time.  Discovery did not discuss these features with Delivery Agent during the contract

6    negotiations, and the E-Commerce Operation Agreement does not mention these features.

7    (Day Decl., ¶¶ 14, 34 and Ex. 6.)  Discovery provided feedback on Delivery Agent's static

8    designs and test website before the Delivery Agent Website was launched in April 2009,

9    but none of its comments involved the specific method or system for formulating refined

10   search queries or product recommendations.  (Beam Decl., ¶¶ 48, 50-69 and Exs. 9-16;

11   Wacker Decl., ¶¶ 27-28; McFadden Decl., ¶ 27; Day Decl., ¶ 35.)

12         27.    The Delivery Agent Website has been quite stable since its launch, with only

13   routine updates and minor revisions.  (Wacker Decl., ¶ 13.)  Discovery has provided only

14   limited comments on the Delivery Agent Website after April 2009, and none of those

15   comments involve adjustments to the features of "additional search suggestions" or

16   "product recommendations."  (*Id.*, ¶¶ 17-20.)  Indeed, those features have remained the

17   same since the Delivery Agent Website was launched in April 2009.  (*Id.*, ¶ 17.)

## ARGUMENT

### I.    LEGAL STANDARD FOR SUMMARY JUDGMENT

20         Summary judgment is appropriate when "the pleadings, the discovery and disclosure

21   materials on file, and any affidavits show that there is no genuine issue as to any material

22   fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

23   An issue is "genuine" only "if the evidence is such that a reasonable jury could return a

24   verdict for the non moving party."  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258

25   (1986).

26

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 11

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

sf-2769909

1   The Federal Circuit has held that "[s]ummary judgment is as appropriate in a patent

2 case as it is in any other case." *Desper Products, Inc. v. QSound Labs, Inc.*, 157 F.3d 1325,

3 1332 (Fed. Cir. 1998).  Thus, the Federal Circuit held that an accused infringer, eBay, was

4 entitled to judgment as a matter of law that it had not induced infringement by the operator

5 of another website, even though the jury had found infringement, and the other website was

6 connected with the eBay website.  *MercExchange, L.L.C. v. eBay, Inc.*, 401 F.3d 1323,

7 1331-33 (Fed. Cir. 2005), *vacated and remanded on other grounds*, 547 U.S. 388 (2006)

8 (vacated ruling regarding injunctive relief and not vacating or addressing the Federal

9 Circuit judgment of no inducement of infringement).  Similarly, the Eastern District of

10 Texas recently granted summary judgment in a pair of decisions involving defendants

11 accused of infringing patents directed to operation of a website, on the ground that the

12 defendants did not operate or control the accused website.  *EpicRealm Licensing, LLC v.*

13 *Autoflex Leasing, Inc.*, 492 F. Supp. 2d 608 (E.D. Tex. 2007) ("*EpicRealm I*"); *EpicRealm*

14 *Licensing, LP v. Autoflex Leasing, Inc.*, 2008 U.S. Dist. LEXIS 109208 (E.D. Tex. July 15,

15 2008), *adopting Magistrate Judge Report at* 2008 U.S. Dist. LEXIS 93175 (E.D. Tex. Nov.

16 13, 2008) ("*Epicrealm II*"). [3]

17 **II. DISCOVERY IS ENTITLED TO SUMMARY JUDGMENT THAT IT DOES**
**   NOT DIRECTLY INFRINGE PLAINTIFF'S PATENTS.**

18

19   Plaintiff has accused Discovery of "directly infringing, solely or jointly with others,

20 inducing others to infringe, or contributorily infringing the Asserted Claims in violation of

21 35 U.S.C. §§ 271(a)-(c), by using or causing to be used Amazon's patented systems and

22 methods by operation of the Discovery On-Line Store."  (Kim Decl. Ex. 2, Plaintiff's

23

24 [3]  Both *Epicrealm I* and *Epicrealm II* involved a Magistrate Judge Report and
 Recommendation and a district court decision, which adopted the Magistrate Judge Report
25 in full.  *See Epicrealm I*, 492 F. Supp. 2d at 615; *Epicrealm II*, 2008 U.S. Dist. LEXIS
 93175, at *11.  This brief cites both the district court opinion and the more detailed analysis
26 of the Magistrate Judge that was adopted by the district court.

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 12

YARMUTH WILSON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

sf-2769909

1    Infringement Contentions, at 3.)  Plaintiff has also asserted that Delivery Agent, SLI

2    Systems, and Aggregate Knowledge "may be or may have been involved in the

3    development and operation of the Discovery On-Line Store."  (*Id.*)

4         As shown below, the undisputed facts and law entitle Discovery to summary

5    judgment that it does not infringe the asserted claims under any of Plaintiff's theories.

6    **A.    The Patent Claims Asserted by Plaintiff Are Directed to the Internal
        Workings of the Delivery Agent Website**

7

8         Plaintiff relies on:  (1) "method" claims, which recite methods of formulating

9    refined search queries or product recommendations that involve certain specific steps; and

10   (2) "system" claims, which recite systems for formulating refined search queries or product

11   recommendations that include certain specific components.  (*See, e.g.*, '225 Patent, Claims 1,

12   14; '986 Patent, Claims 1, 6; '649 Patent, Claim 1; '722 Patent, Claim 1.)[4]

13        All of these claims are directed to the internal operation of components of the

14   computer system that support an e-commerce website and that implement the functions of

15   formulating refined search queries and product recommendations.  For example, the method

16   claims of the Refined Search Patents require steps such as "processing search queries

17   submitted to the search engine . . . to generate query term correlation data"; "receiving a

18   search query from a user"; "using at least the query term correlation data to identify a

19   plurality of additional query terms . . ."; and "presenting the plurality of additional query

20   terms to the user for selection . . . ."  (*See* '225 Patent, Claim 1.)  System claims of the

21   Refined Search Patents require elements such as "a first process which generates a data

22   structure that links key terms to related terms . . ."; "a second process which uses the data

23

---

24   [4] The text of the independent claims asserted by Plaintiff are set forth in Exhibit 1 to the
     accompanying Kim Declaration, and the patents are attached to Plaintiff's complaint

25   (Docket No. 1).  Only the independent claims are at issue here, because non-infringement of
     an independent claim necessarily means that the dependent claims are not infringed.  *See*

26   *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 (Fed. Cir. 1989).

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 13

sf-2769909

1  structure . . . to select related terms to suggest to the user"; and first and second "program

2  modules." (*See* '225 Patent, Claim 14; '986 Patent, Claim 6.)

3      Similarly, the method claims of the Product Recommendation Patents require steps

4  such as "generating a [] data structure which maps individual items . . . to corresponding

5  sets of similar items" and "recommending at least some of the similar items . . . to the user."

6  *See* '649 Patent, Claim 1.  The system claims require elements such as "a first process

7  which determines similarities between items" and "a second process which generates

8  personal recommendations for a user."  (*See* '649 Patent, Claim 16.)

9      As explained in the Undisputed Facts above, Plaintiff's Infringement Contentions

10  are indisputably limited to the Delivery Agent Website operated by Delivery Agent since

11  April 1, 2009, and do not include the old In-House Discovery Store Website.  This is clear

12  because all of the screenshots in Plaintiff's Infringement Contentions are of the Delivery

13  Agent Website, and Plaintiff relies on technology provided by SLI Systems and Aggregate

14  Knowledge that was not used by the old In-House Discovery Store Website.  (Undisputed

15  Facts, No. 3-8.)[5]  Thus, in the context of the Delivery Agent Website at issue in this case,

16  all of the claims asserted by Plaintiff are directed to the internal workings of the computer

17  software and hardware that control the operation of the Delivery Agent Website.

   **B.    Discovery Does Not Directly Infringe the Method Claims Because It
18          Does Not Operate or Control the Delivery Agent Website and Therefore
19          Does Not Perform Any Steps of the Claimed Method.**

20      35 U.S.C. § 271(a) states:  "Except as otherwise provided in this title, whoever

21  without authority makes, uses, offers to sell, or sells any patented invention within the

22  United States or imports into the United States any patented invention during the term of

23  the patent therefor, infringes the patent."  In the context of a method claim, the Federal

24  Circuit has held that direct infringement is limited to "use" of the patented invention,

25  _____

26  [5]  To avoid repetition, facts set forth in the Undisputed Facts above are cited by reference to
    the paragraph number of the Undisputed Fact.

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 14

YARMUTH WILSON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

sf-2769909

1    meaning that the patentholder must prove that the defendant has performed each and every

2    step of the claimed invention. *Joy Technologies, Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed.

3    Cir. 1993); *see also NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1319 (Fed. Cir.

4    2005) ("Congress has consistently expressed the view that it understands infringement of

5    method claims under section 271(a) to be limited to use"); *Atlantic Thermoplastics Co., Inc.*

6    *v. Faytex Corp.*, 970 F.2d 834, 836 (Fed. Cir. 1992) (patentee could not charge defendant

7    with infringement of process claims where defendant distributed but did not manufacture

8    innersoles made by infringing process).

9        As set forth in the Undisputed Facts, Discovery does not operate, control, or supply

10   any of the computer software or hardware components that support the Delivery Agent

11   Website; indeed, Discovery does not even have access to the "back-end" system that

12   controls the website.  (Undisputed Facts, No. 22-24.)  Therefore, Plaintiff indisputably

13   cannot prove that Discovery practices any step of the methods of formulating refined search

14   queries and product recommendations that are claimed by the patents-in-suit and that are

15   allegedly implemented by the Delivery Agent Website.

16       Directly on point is the recent decision in *EpicRealm I*, which granted summary

17   judgment under similar circumstances.  Plaintiff EpicRealm accused defendant Macerich of

18   infringing patents directed to systems and methods for dynamically generating website

19   pages involving interactions between the website computer server and other devices.  492 F.

20   Supp. 2d at 611, 616, 619.  Macerich designed the layout and content of the website pages

21   displayed on the accused website (www.macerich.com), but had outsourced the hosting of

22   its website to a contractor, Red Five.  *Id.* at 614, 617, 621.  The computer software and

23   hardware that controlled the website and "served" (transmitted) website pages was operated,

24   controlled, and selected by Red Five, and not by Macerich.  *Id.* at 614-15, 619, 621-22.

25       Given these facts, the court held that Macerich did not directly infringe the method

26   claims because "Macerich does not take part in or control the operation of the Accused

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 15

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

sf-2769909

Systems" that allegedly infringed the patent; rather, "the Accused Systems are owned, operated, managed, and controlled by Red Five, an independent web hosting company." *Epicrealm I*, 492 F. Supp. 2d at 629-30.  The court concluded that "Macerich does not perform any steps of the patented method" because "the Accused systems are owned and operated entirely by Red Five," and "Macerich does not specify any part of the Accused Systems or direct their method of operation." *Id.* at 630.

Similarly, Discovery cannot be liable for infringing the method claims of the Amazon patents because it does not operate, control, supply, or select any of the computer software and hardware that implements the Delivery Agent Website functions of formulating additional search suggestions and product recommendations.  (Undisputed Facts, No. 22-24.)  Instead, this computer software and hardware is operated and controlled by Delivery Agent, with possible support from SLI Systems and Aggregate Knowledge, who allegedly provide search and product recommendation technology to Delivery Agent that is not under Discovery's control.[6]  (Undisputed Facts, ¶¶ 7, 10, 24.)  Therefore, Discovery does not perform any step of the claimed methods and is entitled to summary judgment that it does not directly infringe the method claims.  *See EpicRealm I*, 492 F. Supp. 2d at 629-30; *Joy Technologies*, 6 F.3d at 775.

**C.    Discovery Does Not Directly Infringe the System Claims Because It Does Not Make, Use, Offer to Sell, Sell, or Import Any Component of the System that Controls the Delivery Agent Website.**

"Direct infringement of a device, product, apparatus or system claim occurs only by the person that actually makes, uses, sells, offers for sale, or imports the apparatus containing each and every limitation of the claim, either literally or under the doctrine of equivalents." *EpicRealm I*, 492 F. Supp. 2d at 630 (citation omitted).

---

[6] Discovery does not know Delivery Agent's precise relationship with SLI and Aggregate Knowledge, but does know that Discovery has no control over any technology that they supply to Delivery Agent.  (Undisputed Facts, No. 10.)

DEFENDANT DISCOVERY COMMUNICATIONS, INC.'S MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 16



YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

sf-2769909

1    In the context of a patent claim directed to the internal workings of a computer

2    system, infringing "use" is limited to the party that controls the operation of the system, and

3    does not include a party that merely uses functions provided by the system without the

4    ability to operate or control the system processing.  Thus, in *EpicRealm I*, the district court

5    held that the allegedly infringing "use" of the accused software "must be the operation of

6    the software to manage the dynamic web page requests," which is "made by a web hosting

7    provider, and not by the party that makes a request or sends information to a web server."

8    *EpicRealm I*, 492 F. Supp. 2d at 614.  The court concluded that Macerich did not "use" the

9    accused system for the purpose of direct infringement because it could not control the

10   allegedly infringing process carried out by Red Five's web server software and had no role

11   in selecting that software.  *Id.* at 614-15; *see also Epicrealm II*, 2008 U.S. Dist. LEXIS

12   109208, at *45-52 (no "use" infringement by Herbalife of same patent as *Epicrealm I*,

13   because there was no evidence that it could control the allegedly infringing software).

14   As noted above, Discovery does not make, operate, control, sell, offer for sale,

15   import, supply, or select any component of the computer software and hardware that

16   supports the Delivery Agent Website.  (Undisputed Facts, No. 10, 23-24.)  Discovery

17   accesses the Delivery Agent Website to confirm that it is functioning properly, but

18   Discovery does not have the ability to review, operate, or control the system software and

19   hardware that implements the allegedly infringing features.  (Undisputed Facts, No. 22-23.)

20   Thus, Discovery does not "use" the Delivery Agent Website for direct infringement

21   purposes and is entitled to summary judgment that it does not directly infringe any of the

22   system claims of the Amazon patents.  *See EpicRealm I*, 492 F. Supp. 2d at 630 (no direct

23   infringement of system claims because Macerich "does not make, use, sell, offer for sale, or

24   import the Accused Systems"); *id.* at 614-15 (using website tools does not constitute

25   infringing "use" because defendant cannot control the allegedly infringing software).

26

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 17



YARMUTH WILSON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

sf-2769909

**D.** **Discovery Does Not Jointly Infringe the Amazon Patent Because It Does Not Direct or Control the Allegedly Infringing Activities of Delivery Agent, SLI Systems, and Aggregate Knowledge.**

Discovery is also entitled to summary judgment that it does not directly infringe the Amazon patents under a theory of "joint infringement." As clarified by recent Federal Circuit decisions, joint infringement requires a showing that a third party practices some elements of the claim under the defendant's "direction or control," such that these actions are deemed to have been carried out "on [defendant's] behalf." *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380-81 (Fed. Cir. 2007); *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329-30 (Fed. Cir. 2008), *cert. denied*, 129 S. Ct. 1585 (2009). Mere "arms-length" business agreements with a third party are not sufficient to ground joint liability. *Id.*

The court in both *EpicRealm* cases found that because the defendants did not select the infringing software and did not issue instructions to their vendors specifically directing the operations that constituted infringement, they were not liable under a joint infringement theory. *See EpicRealm I*, 492 F. Supp. 2d at 633-34; *Epicrealm II*, 2008 U.S. Dist. LEXIS 109208, at *53-54. The court held that it was irrelevant that the defendant worked closely with its vendor on the website and issued directions as to other aspects of the website that were unrelated to the infringing operations, because "[n]one of these activities constitute control by [the defendant] over how [the website host] managed dynamic data requests." *Epicrealm II*, 2008 U.S. Dist. LEXIS 109208, at *54.

As noted above, Discovery had no control over the selection, development, and operation of the computer software and hardware that implemented the accused additional search suggestion and product recommendation features of the Delivery Agent Website. Rather, this technology has been selected, developed, and operated by Delivery Agent, with possible support from SLI Systems and Aggregate Knowledge. (Undisputed Facts, Nos. 9-10, 23-24.) Discovery's relationship with Delivery Agent is an example of an "arms

DEFENDANT DISCOVERY COMMUNICATIONS, INC.'S MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 18

YARMUTH WILSON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

sf-2769909

1   length" business agreement in which the vendor is not under the customer's "direction and

2   control" as to the specific method of implementation, and which thus does not support a

3   joint infringement theory.  *See BMC*, 498 F.3d at 1380-81.  As such, there is no basis for

4   asserting that Discovery infringes the Asserted Claims on a joint infringement theory.  *Id*.;

5   *Epicrealm II*, 2008 U.S. Dist. LEXIS 109208, at *54.

6   **III.    DISCOVERY IS ENTITLED TO SUMMARY JUDGMENT THAT IT DOES
         NOT CONTRIBUTORILY INFRINGE PLAINTIFF'S PATENTS.**

7

8        35 U.S.C. § 271(c) states:  "Whoever offers to sell or sells within the United States

9   or imports into the United States any component of a patented machine, manufacture,

10   combination or composition, or a material or apparatus for use in practicing a patented

11   process, constituting a material part of the invention, knowing the same to be especially

12   made or especially adapted for use in an infringement of such patent, and not a staple article

13   of commodity of commerce suitable for substantial noninfringing use, shall be liable as a

14   contributory infringer."  Liability for contributory infringement requires not only

15   knowledge that the component was especially made or adapted for a particular use but also

16   knowledge of the patent which proscribed that use.  *Hewlett-Packard Co. v. Bausch &

17   Lomb*, 909 F.2d 1464, 1469 (Fed. Cir. 1990).

18        Here, Discovery indisputably does not offer to sell, sell, or import *any* component of

19   the computer software and hardware that controls the Delivery Agent Website — let alone a

20   component that Discovery knew to be "especially adapted" for infringing the Amazon

21   patents.  Therefore, Discovery is entitled to summary judgment on Amazon's claim for

22   contributory infringement under 35 U.S.C. § 271(b).

23

24

25

26

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 19

YARMUTH WILSDON CALFO

sf-2769909

1    **IV.    DISCOVERY IS ENTITLED TO SUMMARY JUDGMENT THAT IT HAS**
              **NOT ACTIVELY INDUCED INFRINGEMENT OF PLAINTIFF'S PATENTS**

2

3         **A.    Active Inducement Requires Plaintiff to Prove that Discovery Has**
                **Knowingly Induced Others to Infringe Plaintiff's Patents, with the**
                **Specific Intent to Cause Such Infringement.**

4

5         35 U.S.C. § 271(b) states:  "Whoever actively induces infringement of a patent shall

6 be liable as an infringer."  The Federal Circuit clarified, in a 2006 *en banc* decision, that

7 active inducement requires that "the alleged infringer knowingly induced infringement and

8 possessed specific intent to encourage another's infringement."  *DSU Med. Corp. v. JMS*

9 *Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc) (citations and internal quotation marks

10 omitted).  This means that merely proving intent to induce acts that constitute infringement

11 is not sufficient, as some prior decisions had suggested.  Rather, "the plaintiff has the

12 burden of proving that the alleged infringer's actions induced infringing acts *and* that he

13 knew or should have known his actions would induce actual infringements."  *Id.* at 1304

14 (emphasis added; internal quotations and citations omitted).  This standard "necessarily

15 includes the requirement that [the alleged infringer] knew of the patent."  *Id.*

16         Further, while knowledge is required, "mere knowledge of possible infringement by

17 others does not amount to inducement; specific intent and action to induce infringement

18 must be proven."  *Id.* at 1305 (internal quotations and citations omitted).

19         [T]he intent requirement for inducement requires more than just intent to
        cause the acts that produce direct infringement.  Beyond that . . . knowledge,

20         the inducer must have *an affirmative intent to cause direct infringement* . . . .
        Accordingly, inducement requires *evidence of culpable conduct, directed to*

21         *encouraging another's infringement*, not merely that the inducer had
        knowledge of the direct infringer's activities.

22

23 *Id.* at 1306 (emphasis added; citations omitted).

24         "Active inducement" is a difficult standard to meet.  Courts have frequently rejected

25 active inducement claims as a matter of law, even under the less stringent standard that was

26 sometimes applied before the Federal Circuit's *DSU* decision.  For example, the Federal

---

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 20



YARMUTH WILSON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

sf-2769909

1    Circuit rejected a claim for active inducement as matter of law — despite a jury verdict

2    finding active inducement —in *MercExchange, L.L.C.*, 401 F.3d at 1331-33.  The

3    patentholder asserted that eBay, the operator of a well-known auction website, had actively

4    induced another party, ReturnBuy, to infringe patent claims directed to a system for

5    "presenting a data record of a good for sale to a market for goods."  *Id.* at 1325-26, 1331.

6    ReturnBuy owned and operated an Internet website that was hosted by the eBay website,

7    and that directed customers who wanted to buy goods from ReturnBuy to the eBay website,

8    which displayed items available for sale by ReturnBuy in an eBay listing.  *Id.* at 1325-26.

9         The patentholder argued that sufficient evidence supported the jury verdict that

10   eBay had induced infringement by ReturnBuy because:  (1) eBay had invested $2 million in

11   ReturnBuy and had an "observer" on ReturnBuy's board of directors; (2) eBay had granted

12   ReturnBuy the right to post goods in volume on the eBay system; (3) eBay was the

13   "primary venue" for ReturnBuy's sales; and (4) eBay supplied engineers to work with

14   ReturnBuy to facilitate the posting of goods for sale through eBay.  *Id.* at 1332.

15        The Federal Circuit held that this evidence was insufficient to prove active

16   inducement as a matter of law because it "does not demonstrate an intent to induce

17   infringement, or even show that eBay had knowledge of any acts of infringement by

18   ReturnBuy"; rather, it "merely indicate[s] that there was a business relationship between the

19   two companies and that eBay had a financial interest in ReturnBuy's business."  *Id.*  The

20   Federal Circuit found that the evidence showed that "eBay encouraged ReturnBuy to post

21   goods for sale on eBay's website," but that this was relevant to only one limitation of the

22   claims.  *Id.*  The Federal Circuit concluded that eBay was entitled to judgment of no active

23   inducement as a matter of law because there was no evidence that "eBay intended to induce

24   ReturnBuy to incorporate the other limitations of the asserted claims," such as using a bar

25   code scanner and bar code printer, or using a digital camera and printer.  *Id.* at 1332-33.

26

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 21


YARMUTH WILSON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1    The *eBay* decision shows that:  (1) a business relationship or financial interest is not

2    sufficient to prove active inducement; and (2) the patentholder must prove that the

3    defendant actively induced infringement of *each and every* limitation of the claims.  *Id.*; *see*

4    *also Hewlett-Packard*, 909 F.2d at 1467-70 (Bausch & Lomb did not actively induce

5    infringement by purchaser of its plotter division, even though it knew of the plotter patent

6    and agreed to indemnify the purchaser against infringement, because it simply sold the

7    plotter division "lock, stock, and barrel"; "had no interest in nor control over what [the

8    purchaser] chose to do with the [plotter] plans"; and inducing infringement was not the

9    "primary purpose" of the indemnity).

10    It is also clear that *mere inaction* is not sufficient to support a claim for active

11    inducement.  Thus, the Federal Circuit held the failure of a parent company to stop

12    infringement by a subsidiary does not constitute either direct infringement or active

13    inducement of infringement, in the absence of a showing that the parent was an alter ego of

14    the subsidiary or took affirmative steps to encourage its conduct.  *A. Stucki Co. v.*

15    *Worthington Industries, Inc.*, 849 F.2d 593, 596-97 (Fed. Cir. 1988); *see also Organon Inc.*

16    *v. Teva Pharms., Inc.*, 244 F. Supp. 2d 370, 380-82 (D.N.J. 2002) (no inducement where

17    there are no facts to suggest that defendants took any steps to encourage doctors to infringe

18    the patent by writing drug prescriptions for the patented use); *Ronald A. Katz Tech.*

19    *Licensing, L.P. v. Verizon Communs., Inc.*, 2002 U.S. Dist. LEXIS 24117, at *15 (E.D. Pa.

20    Dec. 18, 2002) (intent requires evidence that defendant encouraged its subsidiaries to

21    provide the specific type of automated customer service that infringes on plaintiff's patents).

22    Consistent with these principles, the court in *EpicRealm I* granted summary

23    judgment that Macerich did not actively induce its website hosting company, Red Five, to

24    infringe a patent directed to the internal operation of the website server.  *EpicRealm I*, 492

25    F. Supp. 2d at 638-40.  The court emphasized that Red Five "is an independent contractor

26    and not a subsidiary or affiliate of Macerich"; and that Macerich was "indifferent . . . to the

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 22

sf-2769909

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1     particular process or configuration used by Red Five to operate its web servers" and left this

2     to Red Five's discretion. *Id.* at 638. The court also noted that there was evidence that

3     Macerich did not know of Red Five's use of the allegedly infringing system until after the

4     lawsuit was filed, and that the patentholder had failed to present evidence that Macerich had

5     caused Red Five to infringe the patent or had encouraged Red Five's use of the Accused

6     Systems. *Id.* at 638-39.

7
8
       **B.**      **Plaintiff Cannot Establish that Discovery Has Knowingly Induced Delivery Agent to Infringe Plaintiff's Patents, with the Specific Intent to Cause Such Infringement.**

9        Plaintiff cannot establish that Discovery actively induced infringement of the

10    Asserted Claims for multiple reasons. First, Discovery was not even aware of the Amazon

11    patents until after Amazon filed this lawsuit in May 2009, which was after Delivery Agent

12    had already developed and launched the Delivery Agent Website. (Undisputed Facts, No.

13    25.) As the Federal Circuit clarified in *DSU*, proof that the defendant knowingly induced

14    infringement "necessarily includes the requirement that he or she knew of the patent." *DSU*,

15    471 F.3d at 1304. Since Discovery did not know of the Amazon patents until *after* the

16    Delivery Agent Website was developed, Discovery could not possibly have "knowingly

17    induced" Delivery Agent to implement the "refined search" and "product recommendation"

18    functions in a manner that infringed patents that were not even known to Discovery.

19        Second, even if it were assumed that Discovery knew of the Amazon patents before

20    May 2009 (which it did not), Discovery did not direct or encourage Delivery Agent to adopt

21    a specific method or system of formulating refined search queries and product

22    recommendations. (Undisputed Facts, No. 26.) Discovery did not discuss these features

23    with Delivery Agent during the contract negotiations, and the E-Commerce Operation

24    Agreement did not even mention these features, let alone require that they be implemented

25    in a specific manner. (Undisputed Facts, No. 26, 16.) Discovery provided comments to

26    Delivery Agent on its proposed website designs and test website, but none of those

DEFENDANT DISCOVERY COMMUNICATIONS, INC.'S MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 23

sf-2769909

YARMUTH WILSON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

1  comments involved the specific method or system of formulating refined search queries or

2  product recommendations.  (Undisputed Facts, No. 21, 22, 26.)

3         Third, the Delivery Agent Website has been stable after its launch in April 2009,

4  with only routine updates and minor revisions.  (Undisputed Facts, No. 27.)  Discovery has

5  provided only limited comments on the Delivery Agent Website, and none of those

6  comments involve "additional search suggestions" or "product recommendations."  (*Id.*)

7  Indeed, those features have remained the same since the launch.  (*Id.*)

8         Finally, similar to the situation in *EpicRealm I*, Delivery Agent "is an independent

9  contractor and not a subsidiary or affiliate" of Discovery, and Discovery is "indifferent . . .

10 to the particular process or configuration used by [Delivery Agent] to operate its web

11 servers."  *EpicRealm I*, 492 F. Supp. 2d at at 638.  (Undisputed Facts, ¶¶ 4, 15, 16.)

12        For all of these reasons, Plaintiff cannot prove that Discovery "knowingly induced

13 infringement and possessed specific intent to encourage another's infringement," as

14 required by controlling Federal Circuit precedent.  *See DSU*, 471 F.3d at 1306.  Therefore,

15 Discovery is entitled to summary judgment on Plaintiff's claim for active inducement of

16 infringement.

17                              **CONCLUSION**

18        For all of the above reasons, Discovery requests that the Court grant summary

19 judgment on Plaintiff's infringement claims because Discovery indisputably does not

20 operate, control, or supply any component of the computer system that controls the

21 allegedly infringing Delivery Agent Website; did not develop or select any such

22 component; and has not induced Delivery Agent to implement the refined search and

23 product recommendation features in a manner that Discovery knew or should have known

24 would infringe the Amazon patents.

25

26

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 24

YARMUTH WILSONN CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

sf-2769909

1

2

Date:  January 6, 2010                         YARMUTH WILSDON CALFO

3                                                      /s/ Jeremy E. Roller
                                               Angelo J. Calfo, WSBA No. 27079
4                                              Jeremy E. Roller, WSBA No. 32021
                                               818 Stewart Street, Suite 1400
5                                              Seattle, WA 98101
                                               Telephone: 206.516.3800
6                                              Facsimile: 206.516.3888
                                               Email:  acalfo@yarmuth.com
7                                                        jroller@yarmuth.com

8                                              MORRISON & FOERSTER LLP

9                                                      /s/ Grant L. Kim
                                               Michael A. Jacobs (admitted *pro hac vice*)
10                                             Grant L. Kim  (admitted *pro hac vice*)
                                               David E. Melaugh (admitted *pro hac vice*)
11                                             425 Market Street
                                               San Francisco, California  94105
12                                             Telephone: 415.268.7000
                                               Facsimile: 415.268.7600
13                                             Email:  MJacobs@mofo.com
                                                        DMelaugh@mofo.com
14

15                                             *Attorneys for Defendant Discovery
                                               Communications, Inc.*
16

17

18

19

20

21

22

23

24

25

26

DEFENDANT DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY JUDGMENT OF
NO INFRINGEMENT
NO. 2:09-cv-0681-RSL – Page 25

sf-2769909