1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMAZON.COM, INC.,

                  Plaintiff,

    v.

DISCOVERY COMMUNICATIONS, INC.,

                  Defendant.

No. 2:09-cv-0681-RSL

**PLAINTIFF AMAZON.COM, INC.'S
OPPOSITION TO DEFENDANT
DISCOVERY COMMUNICATIONS,
INC.'S MOTION FOR SUMMARY
JUDGMENT OF NO INFRINGEMENT**

NOTED ON MOTION CALENDAR:
June 4, 2010

*Oral Argument Requested*

# [REDACTED VERSION]

AMAZON'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT OF NO INFRINGEMENT
No. C09-0681 RSL

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600/Fax (206) 625-0900

Plaintiff Amazon.com, Inc. ("Amazon") respectfully submits this memorandum in opposition to the motion for summary judgment filed by Defendant Discovery Communications, Inc. ("Discovery").

## I. INTRODUCTION

In this case, Amazon accuses Discovery of infringing four Amazon patents through the Discovery On-Line Store website. Although Discovery moves for summary judgment of non-infringement (Dkt. No. 40, the "Motion"), Discovery *never* contends that the Discovery On-Line Store does not infringe Amazon's patents. Rather, Discovery argues only that it is not *responsible* for the infringement committed through the Discovery On-Line Store. The sole basis for Discovery's Motion is that, as of April 2009—a month before Amazon filed its infringement claims—a third party called Delivery Agent, Inc., purportedly took over operating the infringing Discovery On-Line Store on Discovery's behalf. Discovery contends that because of Delivery Agent's involvement in the Discovery On-Line Store, Discovery cannot be liable for patent infringement. Discovery's contention is demonstrably false and legally wrong. Worse, Discovery conceals critical information from this Court that is flatly inconsistent with Discovery's arguments.

One key example of Discovery's concealment concerns its contract with Delivery Agent. While Discovery relies in its motion almost entirely upon the terms and performance of its contract with Delivery Agent,                    REDACTED

In fact, Discovery is liable for patent infringement—both direct and indirect patent infringement—for the period before April 2009 (when Discovery operated the Discovery On-Line Site) and after April 2009 (when Discovery continued to control and encourage use of

AMAZON'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT OF NO INFRINGEMENT – Page 1
No. C09-0681 RSL

1   the Discovery On-Line Site).  First, Discovery operated the site prior to April 2009, and

2   Discovery does not even deny that the site infringed for the period before April 2009.

3   Discovery's motion for summary judgment must be denied for this reason alone.  Although

4   Discovery contends that Amazon's infringement allegations do not apply to the Discovery

5   On-Line Store before April 2009, that allegation is false.  Amazon accuses the Discovery

6   On-Line Store of infringement, and seeks discovery and damages for the statutory period of six

7   years prior to the patent claims.  However, Discovery has unilaterally refused to provide *any*

8   discovery regarding the Discovery On-Line Store as it existed before April 2009, necessitating

9   Amazon's pending Motion to Compel Discovery of the Accused Discovery On-Line Store.  *See*

10  Dkt. No. 69.  Just because Discovery has improperly withheld information regarding the

11  Discovery On-Line Store before April 2009 does not mean it is not accused of infringement.

12  Because Discovery does not even attempt to show no infringement by its website, its Motion

13  must be denied.

14          Second, for the period after April 2009, Discovery's Motion must be denied because

15  Discovery does infringe directly and indirectly.  Discovery cannot evade responsibility for its

16  manifest infringement by contracting with a third party (Delivery Agent) to operate the

17  Discovery On-Line Store on Discovery's behalf.

18          With respect to direct infringement, Discovery argues that it exerts no "direction or

19  control" over Delivery Agent's operation of the infringing Discovery On-Line Store.  That

20  argument is false and misleading.  Discovery relies on its *original* contract with Delivery Agent

21  to argue it exerts no direction or control,                    REDACTED

22

23

24

25

26

1   REDACTED

2

3

4           Discovery's argument that it is not liable because it has no control is

5   egregiously false.

6       Discovery also is liable for indirect infringement.  The facts omitted and concealed from

7   Discovery's Motion demonstrate that Discovery has induced infringement.  For example,

8           REDACTED

9

10

11

12

13

14           Discovery further induces infringement by advertising the Discovery

15   On-Line Store and its infringing functionality.  Discovery uses website properties it controls to

16   advertise and *directly link* its customers to the Discovery On-Line Store and its infringing

17   functionality.  Thus, Discovery induces infringement by encouraging, advertising, and benefiting

18   from infringing uses of the Discovery On-Line Store.

19       In short, Discovery is liable for patent infringement—for the period before April 2009

20   when it operated the Discovery On-Line Store, and the period after 2009 when it continued to

21   exercise control over the site and encouraged infringement on the site.

22                   **II. STATEMENT OF FACTS**

23       Discovery's Motion does not contest the fact that the Discovery On-Line Store infringes

24   the four patents asserted by Amazon, but it does dispute its responsibility for the infringement.

25   Thus, Amazon limits its summary of the patents and the accused Discovery On-Line Store to the

26

facts underlying Discovery's responsibility for the infringement.

**A.       The Amazon Patents.**

Amazon alleges that Discovery, through the Discovery Store website (herein, the "Discovery On-Line Store"), infringes and has infringed four patents assigned to Amazon. *See* Dkt. No. 1 (Complaint), ¶¶ 8, 12, 15, 18, and Exhibits 1 (the "'225" patent), 2 (the "'986" patent), 3 (the "'649" patent) and 4 (the "'722" patent).

The Amazon Patents generally relate to methods and systems that can be implemented in connection with Internet websites, including those engaged in e-commerce activities. *See generally* '225 at 1:18-30; '986 at 1:19-31; '649 at 1:11-22; '722 at 1:11-22. The '225 patent and '986 patent (together, the "Search Patents") stem from the same, original patent application and claim methods and systems for refining search queries (*e.g.*, suggesting related search terms in response to a search query entered by a user). *See* '225 at 1:13-15, 2:28-31. The '649 patent and the '722 patent (together, the "Recommendations Patents") stem from two different applications and claim methods and systems for recommending products or other items based on items known to be of interest to the user. *See generally* '649 at 2:33-45; '722 at 2:33-45.

**B.       The Accused Discovery On-Line Store.**

The accused Discovery On-Line Store is a website (or collection of websites) used to sell products relating to Discovery's media properties such as the Discovery Channel. *See* Dkt. No. 1, ¶ 9; Dkt. No. 44, ¶ 10. For example, a consumer interested Discovery programming such as "Shark Week" or "Planet Earth" can view clips of the show on the Discovery Channel website and link directly to the Discovery On-Line Store to purchase the DVD. *See* Dkt. No. 44, ¶¶ 4, 7, Ex. 7; Dkt. No. 42, ¶¶ 18-20.            REDACTED

As discussed below, the Discovery On-Line Store has been in existence for more than

1    a decade, and Discovery admittedly operated it before April 2009.

2         **1.     Discovery Admits that It Operated the Discovery On-Line**
                       **Store before April 2009, But It Refuses to Produce Discovery**
3                      **from that Period.**

4         As stated in Amazon's infringement contentions, the accused Discovery On-Line Store

5    "has operated in the past using URLs . . ., including at least http://www.discoverystore.com and

6    http://shopping.discovery.com."  Declaration of Brian Ankenbrandt supporting Amazon's

7    Opposition to Discovery's Motion for Summary Judgment ("Ankenbrandt Decl."), Ex. 1 at 2

8    (also noting such URLs continue to forward users to the current website).  Discovery does not

9    dispute this fact.  *See id.*, Ex. 2, at 2 (Discovery's noninfringement contentions).  Public

10   information further confirms that the Discovery On-Line Store was accessible through the

11   identified URLs for more than a decade.  Dkt. No. 70, ¶¶ 20-23, Exs. 18-19.  However, public

12   information does not reveal the full functionality necessary for a detailed evaluation of past

13   infringement.  *Id.* ¶ 24, Exs. 20-24.

14        Discovery also admits that it designed, operated and controlled the Discovery On-Line

15   Store before April 1, 2009.  *See* Dkt. No 44, ¶¶ 3, 5, 9, 11, 13.       REDACTED

16

17

18

19

20

21        In addition, Discovery admits that the Discovery On-Line Store included

22   recommendations and search-query functionality relevant to Amazon's Recommendations

23   Patents and Search Patents before April 2009.  *See, e.g.*, Dkt. No. 44 ¶¶ 19, 27, 31-35 and

24   Exhibits 1, 2, 4, 5, 6 & 7 thereto.  For example, Discovery admits that the recommendation

25   functionality before April 2009 was remarkably similar to the current functionality.  *Compare*

26   Dkt. No. 44, ¶¶ 32-34, Exs. 5, 6 (product recommendations presented under a "You May Also

Like" heading after April 2009) *with id.*, Ex. 6 (product recommendations presented under a "May we also suggest" heading before April 2009); *see also id.*, ¶¶ 11, 13, 34, 35.

Discovery's Motion and supporting papers also selectively rely on "previously saved images" of a search process performed on the Discovery On-Line Store from before April 2009. However, Discovery never states whether the selected images are representative of how all prior versions of the Discovery On-Line Store functioned with all search queries. *See* Dkt. No. 44 ¶¶ 19, 27, 31-35 and Exhibits 1, 2, 4, 5, 6 & 7 thereto. Regardless, the available evidence raises factual issues that the Discovery On-Line Store *did* include infringing, refined search-query functionality before April 1, 2009.                    **REDACTED**

In short, Discovery does not deny infringement before April 2009, and the limited available evidence, notwithstanding Discovery's refusal to provide discovery, raises genuine issues of material fact that the Discovery On-Line Store infringed during that period.

> **2.    Discovery Partners with Delivery Agent to Continue Operating the Discovery On-Line Store on Discovery's Behalf.**
>
> **REDACTED**

On December 23, 2008, Discovery and Delivery Agent executed their original "E-Commerce Operation Agreement." One of Discovery's declarants, Kelly Day, attaches the E-Commerce Operation Agreement to her declaration. Dkt. No. 46,

¶ 16, Ex. 6.  Without explanation, Ms. Day attaches the agreement "without the related exhibits

and schedules."                    REDACTED

As an initial matter, the evidence supports the inference that Discovery contracted with

Delivery Agent in an attempt to dodge liability for Amazon's inevitable counterclaims as

Discovery prepared for litigation against Amazon.  In parallel with Discovery's negotiations with

Delivery Agent, Discovery was asserting its patents against Amazon—first by a "licensing"

overture in Fall 2008, and ultimately by suing Amazon for infringement in the District of

Delaware on March 17, 2009—two weeks before the so-called "Delivery Agent Website" was

scheduled to launch.  *See* Ankenbrandt Decl., Ex. 7, 8.  Amazon then counterclaimed for patent

infringement in Delaware and filed the present action in this Court on May 15, 2009.  Dkt. No. 1;

Ankenbrandt Decl., Ex. 8.

The evidence also challenges any implication that Discovery had no knowledge of the

infringing functionality of the so-called "Delivery Agent Website."  In sales pitches and

negotiations preceding execution of the ECOA, Delivery Agent summarized the features of the

proposed e-commerce operation that infringe Amazon's Patents, including:

- REDACTED

1   REDACTED

2

3

4   REDACTED

5

6

7

8

9

10

11

12   REDACTED

13

14

15

16

17

18

19

20

21

22

23

24   **III. LEGAL STANDARDS**

25        Summary judgment is appropriate only "if the pleadings, the discovery and disclosure

26   materials on file, and any affidavits show that there is no genuine issue as to any material fact

1  and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  Here,

2  therefore, Discovery must present undisputed facts showing that it has not, as a matter of law,

3  directly or indirectly infringed the Amazon Patents at *any* time in the six years before May 15,

4  2009, when Amazon filed its Complaint. *See* 35 U.S.C. § 286 (permitting infringement damages

5  up to six years before claims asserted); Dkt. No. 1.

### A. Exercising "Control or Direction" over the Infringing Product or Method Constitutes Direct Infringement.

Direct infringement exists where a defendant "controls or directs" another entity in its

performance of the elements of a patent claim. *See BMC Res., Inc. v. Paymentech, L.P.*, 498

F.3d 1373, 1380 (Fed. Cir. 2007).  A "party cannot avoid infringement simply by contracting out

steps of a patented process to another entity.  In those cases, the party in control would be liable

for direct infringement."  *Id.* at 1381 (adding that "[i]t would be unfair indeed for the mastermind

in such situations to escape liability").  Similarly,

> [u]nder *BMC Resources*, the control or direction standard is satisfied in situations
> where the law would traditionally hold the accused direct infringer vicariously
> liable for the acts committed by another party that are required to complete
> performance of a claimed method.

*Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1330 (Fed. Cir. 2008), *cert. denied*, __ U.S.

__, 129 S. Ct. 1585 (2009).  On the other hand, the "control or direction" standard is not met

through the "independent conduct of multiple actors" (*BMC Res.*, 498 F.3d at 1381) or through

"mere 'arms-length cooperation'" (*Muniauction*, 532 F.3d at 1329).

Thus, "control or direction" sufficient to support a finding of direct infringement lies

somewhere on the "continuum between an arms-length relationship and vicarious liability."

*Akamai Techs, Inc. v. Limelight Networks, Inc.*, 614 F. Supp. 2d 90, 120 (D. Mass. 2009); *cf.*

*Cerner Corp. v. Visicu, Inc.*, 667 F. Supp. 2d 1062, 1074 n.11 (W.D. Mo. 2009) (denying

summary judgment of noninfringement in part because "[w]hether [the allegedly controlling

entity] was the 'mastermind' is a question of fact best suited for the jury").

**B.      Actively Encouraging Direct Infringement of a Claimed Invention
Constitutes Indirect Infringement.**

A party indirectly infringes if it either induces or contributes to another's direct

infringement. *See* 35 U.S.C. § 271(b), (c). A "finding of inducement requires a threshold

finding of direct infringement—either a finding of specific instances of direct infringement or a

finding that the accused products necessarily infringe." *Ricoh Co. v. Quanta Computer Inc.*, 550

F.3d 1325, 1341 (Fed. Cir. 2008), *cert. denied*, __ U.S. __, 129 S. Ct. 2864 (2009) (citing *ACCO*

*Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007)).

The inducing party must "knowingly induce[] infringement and possess[] specific intent

to encourage another's infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed.

Cir. 2006) ("[I]nducement requires evidence of culpable conduct, directed to encouraging

another's infringement, not merely that the inducer had knowledge of the direct infringer's

activities."). The intent element is met if the inducing party "knew or should have known his

actions would induce actual infringements" (*id.* at 1304), and the knowledge element is met if

the inducing party knew of the patent or was "deliberate[ly] indifferen[t]" to its existence. *SEB*

*S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1366-67 (Fed. Cir. 2010). Amazon may show

Discovery's intent through circumstantial evidence, just as with direct infringement. *See DSU*,

471 F.3d at 1306.

## IV. ARGUMENT

In its motion for summary judgment of "no infringement," Discovery does not deny that

the Discovery On-Line Store infringes the Amazon Patents, nor does it present facts to dispute

that the website infringes. *See* Motion, *passim*. Instead, Discovery argues only that it bears no

responsibility for the infringement *since* April 2009. *Id.* Because Discovery's Motion does not

challenge the substance of Amazon's infringement contentions, which are supported by the

uncontroverted facts cited therein (*see* Ankenbrandt Decl., Ex. 1), it must be accepted as true for

purposes of the Motion that the Discovery On-Line Store infringes.

1
2

**A.    Discovery Is Not Entitled to Summary Judgment of "No Infringement" before April 2009.**

3          Instead of addressing or denying its infringement before April 2009, Discovery relies on

4    the false premise that Amazon does not accuse the Discovery On-Line Store of infringement

5    before Delivery Agent became involved.  Thus, the Motion does not support a judgment of "no

6    infringement" before April 2009.  However, if the Court were to address this time period despite

7    Discovery's failure to raise the issue, the Motion should be denied.

8          First, Discovery's failure to address the issue justifies denying the Motion for the period

9    before April 2009.  Discovery admits that it operated the Discovery On-Line Store without

10   Delivery Agent's involvement before April 2009.  Discovery further admits that the Discovery

11   On-Line Store included recommendations functionality relevant to Amazon's Recommendations

12   Patents and search-query functionality relevant to Amazon's Search Patents.  Those admissions

13   and other evidence raise genuine issues of material fact that the recommendations functionality

14   and search-query functionality of the Discovery On-Line Store infringed the Amazon Patents

15   before April 2009.  *See* Section II.B.1, *supra*.  Discovery does not discuss a single claim in full,

16   offers no claim construction proposal or argument, and presents no evidence that the Discovery

17   On-Line Store did not and does not infringe.  *See* Motion, at 2-3, 13-14.  Discovery cannot win

18   summary judgment of "no infringement" without substantively addressing or even denying its

19   infringement before April 2009.

20         Second, Amazon does *not*, as Discovery contends, accuse only the so-called "Delivery

21   Agent Website" of infringement.  Amazon accuses the Discovery On-Line Store of infringement,

22   without limitation to the period after Discovery contracted out its continued operation to

23   Delivery Agent and changed its primary Internet address.  Amazon's infringement contentions

24   expressly state that the Discovery On-Line Store was previously available at similar addresses,

25   which, *to this day*, continue to direct users to the current Discovery On-Line Store.  *See* Dkt.

26   No. 69, at 3:10 – 4:15; 8:17 – 9:5.  The historical Discovery On-Line Store served the same

AMAZON'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT OF NO INFRINGEMENT – Page 11
No. C09-0681 RSL

1    purpose—selling Discovery merchandise—and included similar functionality relevant to the

2    Amazon Patents. *Id.*, at 4:17 – 24; 8:17 – 9:5.  Discovery cannot obtain a premature judgment of

3    "no infringement" based on the false premise that Amazon does not accuse the Discovery

4    On-Line Store of infringement before April 2009.

5            Third, it is simply egregious for Discovery to seek summary judgment while denying

6    Amazon all discovery of the accused Discovery On-Line Store as it existed before April 2009.

7    Because Discovery solely possesses but withholds material information regarding the Discovery

8    On-Line Store before April 2009, the Motion should be denied. *See* Fed. R. Civ. P. 56(f)(1).

9    **B.      Discovery Has Directly and Indirectly Infringed the Amazon Patents
             through the Discovery On-Line Store since April 2009.**

10

11           Since April 2009, Discovery continues to infringe Amazon's Patents, both directly and

12   indirectly.  First, Discovery directly infringes by exercising "control or direction" over the

13   Discovery On-Line Store and its infringing functionality.  Second, Discovery indirectly infringes

14   by actively encouraging direct infringement through the Discovery On-Line Store—with full

15   knowledge of Amazon's patents and infringement claims.

16           **1.      Discovery "Controls or Directs" the Infringing Functionality of
                       the Discovery On-Line Store.**

17           Discovery directly infringes the Amazon Patents at least by "controlling or directing"

18   Delivery Agent's operation of the Discovery On-Line Store and its infringing functionality.

19   Discovery's control or direction of the infringing Discovery On-Line Store is evidenced by

20   numerous facts—including critical facts unaccountably omitted from Discovery's Motion.  As

21   discussed further below, the evidence of Discovery's control or direction is extensive and

22   compelling.  First,                    **REDACTED**

23

24

25

26                                                              Second,

REDACTED                    the original ECOA provided ample evidence of

Discovery's control or direction over the infringing Discovery On-Line Store to deny the

Motion. Each reason independently supports denial of Discovery's motion for summary

judgment of no direct infringement.

          **a)**                    REDACTED


                                REDACTED


As the Federal Circuit has stated, it is a "well-settled rule that 'a defendant cannot . . .

avoid liability for direct infringement by having someone else carry out one or more of the

claimed steps on its behalf.'" *See Muniauction*, 532 F.3d at 1329.  Moreover, the "right of

control" over another's actions is the hallmark of a "master-servant" relationship that gives rise

to vicarious liability. "A servant is a person employed to perform services in the affairs of

another and who with respect to the physical conduct in the performance of the services *is

subject to the other's control or right of control*." RESTATEMENT (SECOND) OF AGENCY § 220

(1958) (addressing the control necessary to find a "master-servant" relationship as opposed to

one between independent contractors); *see also BMC Res.*, 498 F.3d at 1379  (Federal Circuit

citing with approval comment to section § 220).          REDACTED


Three months after Amazon asserted its claims that Discovery infringes Amazon's

patents through the site-search, recommendations (          REDACTED          [1]) and

affiliate functionalities of the Discovery On-Line Store,[2]          REDACTED

REDACTED

[1]          REDACTED

[2] As noted above, Discovery asserts the Search Patents and Recommendations Patents in this action. Amazon's "Associates Patents" are asserted against Discovery's "Affiliates" program in Amazon's co-pending counterclaims against Discovery in the District of Delaware. *See* Ankenbrandt Decl., Ex. 9.

REDACTED

REDACTED

**b)    Even the Original Agreement Evidenced Discovery's Sufficient Control to Support Direct Infringement Liability.**

REDACTED

Discovery had sufficient control or direction to deny summary judgment of no direct infringement. The original ECOA alone provided compelling evidence showing that Discovery controlled or directed the infringing Discovery On-Line Store.

First, the contracting parties' view of their own relationship supports Discovery's control or direction over the infringing Discovery On-Line Store. Evidence that a defendant considers another entity its "partner" who operates the infringing steps or components "on its behalf" is highly probative of control or direction and sufficient to find a genuine issue of material fact. *See, e.g., Muniauction*, 532 F.3d at 1329; *Rowe Int'l Corp. v. Ecast, Inc.*, 586 F. Supp. 2d 924, 932-33 (N.D. Ill. 2008) (citing the fact that "Ecast regarded View and Rock-Ola as 'partners'" who manufactured the jukeboxes "for" Ecast in finding sufficient "indicia of [Ecast's] direction and control"); *TGIP, Inc. v. AT&T Corp.*, 527 F. Supp. 2d 561, 578 (E.D. Tex. 2007) (finding that AT&T exercised direction or control over West, based on AT&T's witness statement that West acted "'on behalf of AT&T'" to implement the infringing system). Here, both parties

1  continued to consider their relationship a "partnership" even after executing the ECOA.[3]

2  <div align="center">REDACTED</div>

3

4

5

6

7

8

9

10

11  Second, the terms of the ECOA itself further demonstrate Discovery's control over the

12  Discovery On-Line Store and its infringing functionality.  The existence of a contractual

13  relationship—particularly one that includes "indicia of direction or control" over the infringing

14  functionality—supports a finding of direct infringement.  *See Rowe Int'l Corp.*, 586 F. Supp. 2d

15  at 932 (N.D. Ill. 2008) ; *see also Nuance Commc'ns Inc. v. Tellme Networks, Inc.*, No.

16  06-105-SLR, 2010 U.S. Dist. LEXIS 39388, at *27-28 (D. Del. Apr. 20, 2010) (holding that "a

17  reasonable jury could conclude that, due to the level of contractual control present, Tellme's

18  actions should be attributable to its customers"); *cf. BMC Res.*, 498 F.3d at 1382 (citing the

19  absence of any contractual relationship in finding no control or direction); *Emtel, Inc. v.*

20  *Lipidlabs, Inc.*, 583 F. Supp. 2d 811, 834-36 (S.D. Tex. 2008) (holding no control or direction

21  where the contract gave the allegedly controlled physicians "discretion" over the medical

22  treatments required to infringe, and the allegedly controlling party had "no right to interfere with

23

24  ───────────────

   [3] Although Discovery and Delivery Agent styled their relationship as a one between "independent
25  contractors" in the ECOA (§ 16.3), their characterization of the relationship is by no means dispositive.  *See, e.g.*,
   *Akamai*, 614 F. Supp. 2d at 120 ("Were vicarious liability a requirement for a finding of joint infringement, then an
26  entity could use a patented method with impunity by hiring an independent contractor to perform one or more steps
   of that method.").

the care or treatment"). Here, the ECOA includes significant indicia of control to support Discovery's direct infringement—and certainly to raise genuine issues of material fact.

<center>REDACTED</center>

<center>REDACTED</center>

The ECOA further includes indicia of control over the particular, infringing functionality. For example, the ECOA *requires* that the Discovery On-Line Store "shall . . . *have full search and indexing capabilities*."   <center>REDACTED</center>

---

[4] Discovery Communications, LLC ("DCL") is a subsidiary of Discovery Communications Holdings, LLC ("DCH"), which in turn is a subsidiary of Discovery Communications, Inc. ("Discovery" or "DCI").  *See* Ankenbrandt Decl., Ex. 32 (May 14, 2009 Form 8-K).

1

REDACTED

2

3

4

5

6

7

REDACTED

8

9

10

11

12

13

14

        from the inception of the ECOA, Discovery had the

15

right to control anything about the Discovery On-Line Store at any time, including changing or

halting the infringing functionality.

16

        Courts have found genuine issues of material fact as to "control or direction" on far less

17

evidence.  In *Nuance*, 2010 U.S. Dist. LEXIS 39388, for example, the Court found that "a

18

reasonable jury could conclude that, due to the level of contractual control present, Tellme's

19

actions should be attributable to its customers."  The facts on which the court relied correspond

20

to just a fraction of the evidence here.  Under the ECOA, for example, Delivery Agent provides

21

Discovery an infringing "E-Commerce Operation" hosted by Delivery Agent.  *Compare* ECOA

22

§ 1.11 *with Nuance*, 2010 U.S. Dist. LEXIS 3988, at *13-14 (Tellme "provide[d] the customer

23

services with access to equipment and applications that [we]re physically located at Tellme data

24

centers").  Delivery Agent further agreed to develop the E-Commerce Operation and become

25

Discovery's exclusive provider of e-commerce operations in the United States.  *Compare* ECOA

26

1   §§ 2.1-2.2 *with Nuance*, 2010 U.S. Dist. LEXIS 3988, at *13-14 & n.6 (Tellme "agreed to

2   develop" the system required for infringement).  Particularly when combined with the other

3   terms and admissions in the ECOA        REDACTED         a reasonable jury could

4   conclude that, due to the level of contractual control, Delivery Agent's actions should be

5   attributable to Discovery.

6          Finally, Discovery's reliance on the *EpicRealm* cases is misplaced,    REDACTED

7                                           Discovery did not merely "work[] closely with its vendor" or

8   "issue[] directions as to other aspects of the website." *See* Motion, at 18:16-20.  As an initial

9   matter, the extent to which Discovery required DA to include the infringing functionality in the

10  Discovery On-Line Store is, at a minimum, disputed.  As discussed above, the original ECOA

11  included terms showing that Discovery required include the infringing functionality in the

12  Discovery On-Line Store.           REDACTED

13

14

15

16          **2.      Discovery Also Indirectly Infringes by Encouraging and
                       Benefiting from the Use of the Infringing Discovery On-Line**
17          **Store.**

18          Here, in addition to Discovery's direct infringement through its control or direction of the

19  infringing Discovery On-Line Store, Discovery indirectly infringes by inducing infringing uses

20  of the Discovery On-Line Store.  Preliminarily, there is no question that Discovery's inducement

21  is supported by predicate acts of direct infringement.  Discovery's Motion does not contest the

22  fact that the Discovery On-Line Store infringes.  Likewise, Discovery's motion does not contest

23  the fact that Delivery Agent and users of the Discovery On-Line Store directly infringe. *See*

24  *particularly* Motion, at 20:1-24:16.  Regardless, the undisputed facts (including those detailed in

25  Amazon's infringement contentions) support a threshold finding that both Delivery Agent and

26  users of the Discovery On-Line Store directly infringe Amazon's Patents.

1    For example, Discovery cannot contest predicate acts of direct infringement based on the

2    purported involvement of other third parties, such as Aggregate Knowledge and SLI Systems.

3    Particularly with respect to the system claims that Amazon asserts from each of the Amazon

4    Patents, both Delivery Agent and users of the Discovery On-Line Store directly infringe at least

5    through their "use" of the claimed inventions. *See* 35 U.S.C. § 271(a). *See also NTP, Inc. v.*

6    *Research in Motion, Ltd.*, 418 F.3d 1282, 1317 (Fed. Cir. 2005) (holding that an entity "uses" the

7    claimed system where "the system as a whole is put into service, *i.e.*, the place where control of

8    the system is exercised and beneficial use of the system obtained"); *CIVIX-DDI, L.L.C. v. Cellco*

9    *P'ship*, 387 F. Supp. 2d 869, 883-84 (N.D. Ill. 2005) ("[U]nder the Federal Circuit's holding in

10    *NTP*, an alleged infringer uses a claimed system when the alleged infringer exercises control

11    over the system and obtains beneficial use of the system."). Here, both Delivery Agent and

12    consumers visiting the Discovery On-Line Store directly infringe the Amazon Patents when they

13    exercise control over the infringing search and recommendations functionality and obtain

14    beneficial use of the infringing systems. *See*, Ankenbrandt Decl., Ex. 4 (Deckard Depo.) at

15    47:18-48:8, Ex 10 (Combs Depo.) at 149:13-155:2.

16    Turning to Discovery's acts of inducement, Discovery has knowingly induced the direct

17    infringement both by Delivery Agent and by users of the Discovery On-Line Store, with specific

18    intent to encourage their infringement. *See DSU*, 471 F.3d at 1306. Discovery did so with full

19    and specific knowledge of the Amazon Patents *and* its infringement allegations, as its culpable

20    conduct continued months after Amazon asserted its claims. As discussed below, Discovery has

21    induced infringement in at least two ways.

22    First,                                   REDACTED

23

24

25

26

1

REDACTED

2

3

4

5

6

7

8

9

10

11

12     Second, Discovery's advertising of the Discovery On-Line Store and its infringing

13 functionality independently supports inducement liability. "Evidence of active steps taken to

14 induce infringement, *such as advertising an infringing use*, can support a finding of an intention

15 for the product to be used in an infringing manner." *Lucent Techs., Inc. v. Gateway, Inc.*, 580

16 F.3d 1301, 1322 (Fed. Cir. 2009) (emphasis added); *see also DSU*, 471 F.3d at 1305.

17

REDACTED

18

19

20

21

22

23

24

25

26

1    Although Discovery concedes in papers supporting the Motion that it provides

2    "marketing support" to Delivery Agent (*id.*) and provides links from websites it admittedly

3    controls to the Discovery On-Line Store (Dkt. No. 42, ¶¶ 18-20), it neglects to disclose that its

4    ongoing advertising of the Discovery On-Line Store    REDACTED    encourages users to

5    infringe by integrating its own family of websites seamlessly with the Discovery On-Line Store.

6                              REDACTED

7

8                                                              And, critically,

9    Discovery neglects to disclose or address the fact that it encourages consumers to infringe by

10   linking them ***directly to the infringing recommendations and site-search functionality***.  See

11   Ankenbrandt Decl., ¶ 32; Ex. 30; *see also* Ex. 10 (Combs Depo.) at 172:11-173:25.  With respect

12   to the Recommendations Patents, for example, the page includes a section entitled, "You May

13   Also Like," followed by the list of recommended products—precisely the functionality that

14   Amazon accuses of infringement. *Id.* ¶ 32, Exs. 1, 30.  The same page also includes a link to the

15   "SEARCH" functionality that Amazon accuses of infringing the Search Patents. *Id.* ¶ 32, Exs. 1,

16   30.

17           Finally, Discovery directly benefits from encouraging users to visit the Discovery

18   On-Line Store,                    REDACTED

19

20

21                                                              In sum, Discovery uses its own

22   websites to advertise and ***directly link*** consumers to the infringing functionality of the Discovery

23   On-Line Store, then benefits from the resulting infringement by taking a share of the revenues

24   earned through the consumer's purchases.

25           Discovery's cited authorities cannot save it from liability for inducement.  Discovery

26   cites two cases for the false proposition that "the patentholder must prove that the defendant

1   induced infringement of *each and every* limitation of the claims." Neither case so holds.  In

2   *MercExchange, L.L.C. v. eBay, Inc.*, 401 F.3d 1323, 1332-33 (Fed. Cir. 2005), *vacated and*

3   *remanded on other grounds*, 547 U.S. 388 (2006), the Federal Circuit held only that eBay's

4   encouragement of acts relevant to just one limitation of the asserted claims was insufficient to

5   find that eBay encouraged infringement of any claim *as a whole*—not that evidence of intent

6   was required separately for each and every limitation.  Here, Discovery intentionally encourages

7   infringement of the claimed inventions as a whole—    **REDACTED**    and

8   by continuing to advertise and link users directly to the Discovery On-Line Store's infringing

9   functionality with knowledge of Amazon's patents and infringement claims.

10         Discovery's citation to *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464,

11   1467-70 (Fed. Cir. 1990) is also unavailing—    **REDACTED**

12                                As an initial matter, that out-dated case

13   does not hold that an element-by-element showing of intent is necessary to an inducement

14   finding.  *See id.* at 1469 (opining only that "proof of actual intent to cause the acts which

15   constitute the infringement is a necessary prerequisite to finding active inducement").  Instead,

16   Discovery cites it for the unrelated proposition that "Bausch & Lomb did not actively induce

17   infringement . . ., even though it . . . agreed to indemnify the purchaser against infringement" of

18   H-P's plotter patent. *See* Motion, at 22:4-9.    **REDACTED**

19

20

21

22         Regardless, Discovery *is* liable for inducement under the reasoning in *Hewlett-Packard*:

23       The most troubling aspect of the agreement between [Bausch & Lomb] and [the
          purchaser] is the indemnification clause.  Cases have held that an indemnification

24       agreement will generally not establish an intent to induce infringement, but that
          *such intent can be inferred when the primary purpose is to overcome the*

25       *deterrent effect that the patent laws have on would-be infringers*.

26

*Hewlett-Packard*, 909 F.2d at 1470 (emphasis added) . There, the indemnification clause was part of Bausch & Lomb's sale, "'lock, stock and barrel,'" of an entire business (Houston Instruments), which included a wide variety of components that had no connection to the infringing "grit wheel plotters" business. *Id.* at 1469-70. The totality of circumstances surrounding the agreement showed that "what B & L really wanted out of this agreement was the sale of Houston Instruments at the greatest possible price." *Id.* at 1470. Here, by contrast,

<div align="center">REDACTED</div>

From those facts, it can certainly be inferred that the primary purpose was to overcome the deterrent effect that the patent laws—and Amazon's infringement claims in particular—had on Delivery Agent.[5]

<div align="center">

## V. CONCLUSION

</div>

Discovery's specious motion for summary judgment of "no infringement" should be denied in its entirety. Even the evidence available at this early stage of litigation demonstrates Discovery's direct and indirect infringement, despite Discovery's attempts to conceal it. In addition to denial of the Motion in its entirety, Amazon respectfully asks the Court for a finding that at least

<div align="center">REDACTED</div>

was submitted in bad faith.

---

[5]     Discovery also denies contributory infringement, arguing only that it does not provide "computer hardware or software" components adapted to the invention. <span>REDACTED</span>

*see also, e.g.*, '649 at 18:20-37; '722 at 17:24-45; '225 at 15:66 – 16:6; '986 at 15: 33 – 16:3. Thus, genuine issues of material fact exist that Discovery also indirectly infringes under 35 U.S.C. § 271(c).

Dated this 6th day of May, 2010.

s/William F. Cronin
William F. Cronin, WSBA No. 8667
Michael A. Moore, WSBA No. 27047
**CORR CRONIN MICHELSON**
**BAUMGARDNER & PREECE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, WA 98154
Telephone: (206) 625-8600
Facsimile:  (206) 625-0900
wcronin@corrcronin.com
mmoore@corrcronin.com

JOSH A. KREVITT*
Y. ERNEST HSIN*
SARAH E. PIEPMEIER*
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
*Admitted Pro Hac Vice*

*Attorneys for Plaintiff AMAZON.COM, INC.,*
*KNOBBE, MARTENS, OLDSON & BEAR, LLP*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

The undersigned hereby certifies as follows:

I am employed at Corr Cronin Michelson Baumgardner & Preece LLP, attorneys of record for Plaintiff herein.

On May 6, 2010, I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Angelo J. Calfo
> Jeremy E. Roller
> YARMUTH, WILSDON, CALFO PLLC
> 818 Stewart Street, Suite 1400
> Seattle Washington, 98101
> Email: acalfo@yarmuth.com; jroller@yarmuth.com
>
> Michael A. Jacobs, *pro hac vice*
> David E. Melaugh, *pro hac vice*
> Deok Keun M. Ahn, *pro hac vice*
> MORRISON & FOERSTER LLP
> 425 Market Street
> San Francisco, California  94105
> Phone: (415) 268-7000
> mjacobs@mofo.com; dmelaugh@mofo.com; dahn@mofo.com
>
> *Attorneys for Defendant Discovery Communications, Inc.*

and I hereby certify that I have delivered via U.S. Mail the document to the following non CM/ECF participants:  N/A

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED: May 6, 2010 at Seattle, Washington.

_____
Antesha Esteves

AMAZON'S OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT OF NO INFRINGEMENT – Page 26
No. C09-0681 RSL

288 07 ke066701

CORR CRONIN MICHELSON
BAUMGARDNER & PREECE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600/Fax (206) 625-0900